CULPEPPER, Judge.
Home Insurance Company filed this suit alleging that it was the property damage insurance carrier on the vessel M/VJ.C., which sank as a result of a collision with the M/V Texas. Under its policy, Home Insurance Company paid $9,700 to the owner of the M/VJ.C. and took a subro-gation. It then filed the present suit against defendant, Dooley Engine Service, Inc., alleging that the cause of the collision was the failure of the reverse gear of the engine and/or clutch of the M/VJ.C., which had been negligently installed and/or overhauled by Dooley.
Dooley filed a third party demand against its liability insurer, Employers Commercial Union Companies, demanding that it defend this suit and indemnify Dooley under the terms of its policy. The third party defendant, Employers, filed an answer refusing to provide a defense and denying coverage on the grounds that its policy issued to Dooley excluded “completed operations”.
Prior to a trial on the merits, a settlement was reached between Home Insurance Company and Dooley, and the principal demand was dismissed without any decision of the issues of liability or coverage under Employers’ policy. The third party plaintiff, Dooley, then proceeded to trial against Employers seeking attorney’s fees incurred by Dooley in defending the suit.
After a hearing on the merits, the district judge first decided that Employers had a duty to defend Dooley on the principal demand, and he awarded judgment for attorney’s fees expended by Dooley in the sum of $3,078.18. However, after granting a rehearing, the district judge recalled his previous decision and held that Employers did not owe Dooley a duty to defend. Dooley appealed.
 The sole issue on appeal is whether Employers owed a duty to defend Dooley on the principal demand. In the recent case of Mut. v. Newark Insurance Company, 289 So.2d 237 (La.App. 1st Cir. 1974), writs refused, the rule as to an in *26 surer’s duty to defend under its policy is succinctly stated as follows:
It is well settled that an insurer’s duty to defend its insured is broader than coverage. It is also well established that the duty to defend depends upon the allegations of plaintiff’s petition, and that the insurer must defend unless the allegations unambiguously exclude coverage. The applicable test in such instances is if, assuming plaintiff’s allegations to be true, there is both coverage under the policy and “liability to plaintiff, the insurer is obliged to defend regardless of the outcome of the litigation. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253; Spiers v. Lane, La.App., 278 So.2d 549.”
The petition of Home Insurance Company in the principal demand alleges that the collision between the M/VJ.C. and the M/V Texas occurred on March 18, 1971 as a result of the failure of the engine and/or clutch of the M/VJ.C. to operate in the reverse position. The petition also alleges that the clutch failed due to improper installation and/or overhaul by the defendant, Dooley Engine Service, Inc. in February of 1971, approximately one month prior to the collision. Under these allegations, the work was performed by Dooley and the vessel was returned to the owner and put back in operation about a month before the collision occurred.
It was stipulated that at the time of the accident on March 18, 1971 there was in force and effect the policy of insurance issued by Employers Commercial Union Companies to Dooley Engine Service, Inc. This is a “Manufacturer’s And Contractor’s Liability Insurance” policy. The coverages are those for which specific premium charges are made. The basic coverage provided is for “Premises — Operations” which premises and operations are set forth in the policy as follows:

From the above LIABILITY SCHEDULE it is apparent that Dooley paid for liability coverage on two separate and distinct kinds of hazards, (1) premises and (2) operations. The premises hazard covers liability arising out of the use of premises. The premises covered are: (1) “BUILDINGS OR PREMISES— BANKS, MERCANTILE, MANUFACTURING OR OFFICE, NOT OCCUPIED BY THE INSURED”; and (2) “ADDITIONAL PRIVATE RESIDENCE — CODE 0770”. The second type of hazard covered is “Operations”, which is described as “MILLWRIGHT WORK N.O.C. — ERECTIONS OF REPAIR OF MACHINERY OR EQUIPMENT”. Such “operations” conducted by the in *27 sured are covered, subjected to the other provisions and exclusions of the policy, regardless of whether these operations are conducted on the insured premises or elsewhere.
In the present case, we are not concerned with any liability arising out of the premises hazard. We are concerned here only with a liability arising out of the operations hazard, i. e., Dooley’s repair of the engine or clutch of the boat.
The printed form used for “Manufacturer’s and Contractor’s Liability Insurance” provides certain exclusions as follows :
“Exclusions
This insurance does not apply:
* * * * %
(m) to bodily injury or property damage included within the completed operations hazard or the products hazard;” (Emphasis supplied)
The “completed operations” hazard which is excluded is defined in the policy under “Definitions” as follows:
"completed operations hazard” includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily Injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations” include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
In his reasons for judgment for his first opinion, the district judge decided that under Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958) and its progeny, the “completed operations” exclusion in the policy was ambiguous and therefore must be construed against the insurer. However, on rehearing, the trial judge recalled his original opinion and decided that this case is controlled by Oceanonics, Inc. v. Petroleum Distributing Company, La., 292 So.2d 190 (1974) wherein it is pointed out that after Kendrick v. Mason, the language of 'the completed operations exclusion was changed so as to meet the objections set forth in Kendrick. The policy in the present case, as the policy in Oceanonics, Inc., defines the “completed operations hazard” as including damage “but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.” Thus, the trial judge concluded that since in the present case the petition in the principal demand alleges that the damages occurred after the operations by Dooley were completed and occurred away from the premises owned or rented by Dooley, coverage was excluded from the policy. The district court did not rule on the effect of Endorsement G210 hereinafter discussed.
In its brief filed in this court, counsel for Dooley now concedes that, consid *28 ered alone, exclusion (m) which excludes “completed operations” does indeed exclude the damages which occurred in the present case. However, counsel for Dooley argues that there is an endorsement attached to the policy which deletes exclusion (m), the effect of which is that the policy now provides completed operations coverage.
The endorsement in question is G210, which appears as follows:

Paragraph No. 2 of Endorsement G210 states clearly that “Exclusion (m) is deleted”. The effect of this is that the completed operations exclusion is deleted from the policy and Dooley has coverage of liability arising out of his operations in the repair of machinery or equipment.
Counsel for Employers argues that Endorsement G210 was added to this “Manufacturer’s and Contractor’s Liability Policy” for the purpose of adding premises coverage to Dooley’s private residence, which is located above Dooley’s shop but in the same building. Employers contends that the endorsement deletes exclusion (m) only as to the residence and not as to the shop.
This is a very difficult argument to understand. When we consider, as discussed above, that the premises hazard and the operations hazard are two separate and distinct kinds of coverages, and that Dooley’s operations in the repair of machinery are covered under the liability schedule, *29 regardless of whether those operations are conducted in the shop or in the residence or at any other location, why did the insurer use this endorsement to make a change in the premises coverage when the endorsement on its face also makes a change in the operations coverage. There is no language in the policy or in the endorsement which states that exclusion (m) is deleted only as to operations conducted in the residence. On its face, the endorsement deletes exclusion (m) as to all operations.
It may be, as counsel for Dooley suggests, that in this instance Employers used the wrong endorsement. The basic coverage in the present case is for “MANUFACTURER’S AND CONTRACTOR’S LIABILITY INSURANCE”. Endorsement G210 states in its heading that “This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: Owners, landlords and tenants liability insurance— designated premises and related operations in progress — including structural alterations, new construction and demolition.” This would indicate that the endorsement was intended to be used with a'n Owners,Landlords And Tenants Liability Insurance policy. In that kind of a policy, it would be more logical to delete the completed operations exclusion, because there would be less risk from “operations” conducted by such insureds.
However, regardless of whether Employers used the wrong endorsement, this docs not change the legal effect of their addition of this endorsement to this particular policy. And the endorsement clearly deletes exclusion (ni), the effect of which is to delete the completed operations exclusion.
Employers’ argument that the endorsement applies only to the residence is further weakened by the language of the endorsement itself. The endorsement states in paragraph No. 1 “The definition of ‘insured premises’ is amended to read as follows: Insured premises means the premises described above or designated in the policy as subject to this endorsement . ” The only “premises described above” in the endorsement is “Code 0770”. There is no explanation in the policy or the endorsement as to the meaning of Code 0770. Perhaps, we could infer from the liability schedule that this code number means the additional private residence. But even if we accept this meaning of the code number, the effect is that the “insured premises” is amended to include the private residence. It is difficult to understand why such an endorsement was added to this policy, since the private residence was already listed in those premises which were insured as to liability arising out of the use thereof. Nevertheless, as pertinent here, it is our opinion that the only thing the endorsement accomplished was to restate that the private residence is included in the definition of insured premises and exclusion (m) is deleted. We realize that this makes little sense from the point of view of the insurer, and that it may not have intended to delete exclusion (m). But that cannot alter the fact that the endorsement was added to the policy and that it is part of the contract between the parties. Of course, the jurisprudential rule is well established that any ambiguity or vagueness in an insurance policy is construed against the insurer who wrote it.
We conclude that, at the very least, the addition of Endorsement G210 to this Manufacturer’s And Contractor’s Liability Insurance policy creates a serious ambiguity as to whether the completed operations exclusion was deleted entirely, or deleted only as to the residence. Under the rules stated above, Employers owes Dooley a defense in this case, since the allegations of the petition in the principal demand, and the provisions of Employers’ policy with its attached endorsements, do not unambiguously show that there was no coverage under the policy.
For the reasons assigned, the judgment appealed is reversed and set aside. It is *30 now ordered, adjudged and decreed that there be judgment herein in favor of the third party plaintiff, John Doe, d/b/a Dooley Engine Service and/or Dooley Engine Service, Inc., and against the third party defendant, Employers Commercial Union Companies, for the sum of $3,078.-18, together with legal interest thereon from date of judicial demand until paid, and all costs of these proceedings, both in the trial and appellate courts.
Reversed and rendered.